912 So.2d 307 (2005)
William C. BULGIN, Petitioner,
v.
STATE of Florida, Respondent.
Kinjal H. Patel, Petitioner,
v.
State of Florida, Respondent.
Brandon P. Pelky, Petitioner,
v.
State of Florida, Respondent.
Nos. SC03-2214, SC03-2215, SC03-2217.
Supreme Court of Florida.
May 19, 2005.
Rehearing Denied September 21, 2005.
*308 Fred M. Conrad, Tallahassee, FL, and Edward T. Bauer and Matthew K. Foster of Brooks, LeBoeuf, Bennett and Foster, Tallahassee, FL, for Petitioners.
Charles J. Crist, Jr., Attorney General, Robert R. Wheeler, Bureau Chief, Criminal Appeals, and Thomas D. Winokur, Assistant Attorney General, Tallahassee, FL, for Respondents.
ANSTEAD, J.
We have for review State v. Bulgin, 858 So.2d 1096, 1096-97 (Fla. 1st DCA 2003), which the First District Court of Appeal consolidated with two other cases, which expressly and directly conflicts with the decision in Williams v. State, 757 So.2d 597 (Fla. 5th DCA 2000).[1] We have jurisdiction. See Art. V, § 3(b)(3), Fla. Const. For the reasons set forth herein, we quash the decision of the First District Court of Appeal and approve Williams. We hold that a criminal defendant's agreement to cooperate with the police, standing alone, does not act as a waiver of the right to a speedy trial or otherwise prevent the running of the time in which a defendant must be brought to trial.

PROCEEDINGS BELOW
The First District's opinion summarizes the facts of this case as they apply to all three petitioners:
The appellees/defendants were all arrested on December 15, 2000 for the sale of a controlled substance. The three agreed to cooperate with law enforcement in a continuing drug investigation and were released. On or about December 20, 2000, the defendants, accompanied by their attorneys, agreed to provide substantial assistance to law enforcement by conducting controlled drug buys. The law-enforcement officials agreed that no charges would be filed until their assistance was complete. These agreements satisfied the defendants' concern that formal charges and court appearances would jeopardize their covert assistance. The defendants did not sign speedy trial waivers and there was no discussion of the issue. After differing levels of cooperation with law enforcement, the defendants were arrested and charged. The defendants filed motions for discharge based on the speedy trial rule, Fla. R.Crim. P. 3.191, which were granted by the trial courts.
State v. Bulgin, 858 So.2d 1096, 1096-97 (Fla. 1st DCA 2003). The First District reversed the trial courts' decisions, ruling that the delays in holding trial were attributable to the petitioners. Id. at 1097 ("Here, the failure to hold trials for the defendants within the speedy trial rule was attributable to the defendants' cooperation agreements because the agreements postponed the charges and court proceedings until their assistance was complete."). The petitioners sought review in this Court, citing conflict with the Fifth District's decision in Williams v. State, 757 So.2d 597 (Fla. 5th DCA 2000).

WILLIAMS
In Williams v. State, 757 So.2d 597 (Fla. 5th DCA 2000), the defendant was arrested and thereafter entered into an agreement to assist police. Id. at 598. After acting as a drug informant for the police for several weeks, Williams was "re-arrested" by the State for the same offense. Id. *309 However, because the State failed to bring the case to trial within 175 days from his initial arrest, he filed a motion for expiration and discharge under the speedy trial rule, which the trial court denied. Id. On appeal, the Fifth District reversed, and rejected the State's argument that because Williams was assisting the State, he was "unavailable" for trial under Florida Rule of Criminal Procedure 3.191(k). Id. at 600. Specifically, the Fifth District concluded:
A person is deemed "unavailable" for trial if the person or the person's counsel fails to attend a proceeding where their presence is required or the person or counsel is not ready for trial on the day trial is scheduled.
Here, no proceedings were ever scheduled and the trial was never set. Thus Williams cannot be considered "unavailable."
Id. The court also noted that there was no evidence that Williams had waived his right to a speedy trial or had otherwise engaged in conduct that would estop him from asserting his rights. Id. The court specifically rejected the State's claim that the speedy trial rule should not be followed because Williams was not placed in jail upon his initial arrest:
The state also argues that Williams should be estopped to claim speedy trial protections because he was free following his unarrest. However, a defendant need not remain in custody to have the benefits of the speedy trial rule. The speedy trial rule specifically provides that a person charged with a crime is entitled to the benefits of the rule whether the person is in custody or is at liberty on bail or recognizance or other pre-trial release condition. If the state is concerned about speedy trial, it could merely obtain a waiver from the defendant, as part of his substantial assistance agreement.
In addition, the speedy trial rule provides that the intent and effect of the rule shall not be avoided by the state by nolle prossing a crime and then prosecuting a new crime grounded on the same conduct or criminal episode. Just as the state cannot avoid the effect of the rule by the prosecutor's actions in nolle prossing a crime, the state should not be able to avoid the effect of the rule by the actions of the police in "unarresting" the defendant.
Id. The State now asserts that we should hold that the petitioners were responsible for the State not bringing them to trial by virtue of their agreement to cooperate with the police. We decline to do so because we conclude such a holding would be contrary to the provisions and purpose of the speedy trial rule and the underlying constitutional right it protects.

ANALYSIS
The United States Supreme Court has repeatedly emphasized the importance and fundamental nature of a citizen's right to a speedy trial as guaranteed by the Sixth Amendment. See e.g., Klopfer v. North Carolina, 386 U.S. 213, 226, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) ("The history of the right to a speedy trial and its reception in this country clearly establish that it is one of the most basic rights preserved by our Constitution."). Further, the Court has held that it is the individual states' responsibility to provide an accused with clear parameters to assure the protection of the right to a speedy trial. Klopfer, 386 U.S. at 225-26, 87 S.Ct. 988; see also Barker v. Wingo, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ("The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but [the Supreme Court's] approach must be less precise.").
*310 Consistent with this mandate, Florida Rule of Criminal Procedure 3.191(a) requires that a defendant who is charged with a felony be brought to trial within 175 days of arrest, absent a more specific demand, and that those charged with a misdemeanor be tried within ninety days. Subdivision (p) outlines the proper remedy, including discharge, when the State fails to try a case within 175 days. However, that subdivision also provides: "No remedy shall be granted to any defendant under this rule until the court has made the required inquiry under subdivision (j)." Subdivision (j), entitled "Delay and Continuances; Effect on Motion" states that there are four circumstances in which a pending motion for discharge is properly denied. Of the four exceptions, the State now relies upon two to deny petitioners relief: "(2) the failure to hold trial is attributable to the accused, a codefendant in the same trial, or their counsel; (3) the accused was unavailable for trial under subdivision (k)...." Fla. R.Crim. P. 3.191(j). In other words, the State asserts that its failure to bring the petitioners to trial "is attributable to the [fault of] the accused" and the petitioners' "unavailab[ility] for trial." We conclude that cooperation with the police, standing alone, does not constitute conduct contemplated by either of these exceptions to the rule.
Both Bulgin and Williams involve situations where defendants were arrested, cooperated with the police, and were arrested a second time on the same charges, but at no time waived their rights to a speedy trial. See Bulgin, 858 So.2d at 1096-97. In both cases, the State failed to bring the cases to trial within 175 days of the defendants' initial arrests. Compare Bulgin, 858 So.2d at 1096-97, with Williams, 757 So.2d at 598-99. The Bulgin court considered the situation in the context of whether or not the delay was attributable to the defendants under rule 3.191(j)(2), whereas the Williams court considered the situation in the context of whether or not the defendant was "unavailable" under rule 3.191(j)(3). We conclude that neither exception to the rule applies here.
This Court has consistently held that the 175-day speedy trial period begins upon a defendant's initial arrest. See Weed v. State, 411 So.2d 863, 865 (Fla.1982) ("[T]he date of the original arrest is the focal point for speedy trial considerations, irrespective of changes made in charges. Only in specifically delineated circumstances can the time periods be adjusted."); see also State v. Naveira, 873 So.2d 300, 305 (Fla.2004) (citing Genden v. Fuller, 648 So.2d 1183, 1184 (Fla.1994)) ("The speedy trial period begins when a defendant is first taken into custody, not when charges are first filed.").
In Weed, in an opinion by Justice Adkins, this Court summarized some of the case law in which the courts had concluded that the State's unilateral actions could not delay the running of time for speedy trial:
In [State v.] Thaddies, [364 So.2d 819 (Fla. 4th DCA 1978)] the court held that when a charge is dropped and another is filed based on the same incident, the date of the arrest is the relevant date for speedy trial purposes. In [State ex rel. Smith v.] Nesbitt, [355 So.2d 202 (Fla. 3d DCA 1978)] the fact that the charge was changed from a felony to a misdemeanor and then back to a felony did not alter the running of the speedy trial period from the original arrest date. See also Gue v. State, 297 So.2d 135 (Fla. 2d DCA 1974). In [State ex rel. Williams v.] Cowart, [281 So.2d 527 (Fla. 3d DCA 1973)] there was a mistrial, after which charges were amended. After the expiration of the 90 days under Rule 3.191(g), the state attempted to nolle prosequi one charge. The court *311 held the speedy trial time limit had run since the trial had not commenced within the 90 days. The court went on to add that the fact that the state entered a nolle prosequi did not operate to deprive the accused of his right to a speedy trial given the language in Rule 3.191(h)(2) which provides that the time cannot be extended by the filing of new charges based on the same criminal episode.
These cases stand for a basic proposition that is central to this case, that is, the date of the original arrest is the focal point for speedy trial considerations, irrespective of changes made in charges. Only in specifically delineated circumstances can the time periods be adjusted.

411 So.2d at 864-65 (emphasis supplied). Thus, in the case at bar, it is apparent that under Florida law the speedy trial period started running when petitioners were first arrested. The question then becomes whether the petitioners were at fault or acted in some way to prevent the State from bringing the case to trial within the speedy trial time. We find no such action here.
We hold that the outcome in Williams comports with both the Sixth Amendment guarantee to a speedy trial and Florida's speedy trial rule. Under the speedy trial rule, the defendant, upon being arrested, has no obligation under the rule to further assert his right to be brought to trial unless he first waives his right. The Williams decision correctly points out that it is the State's responsibility to bring those arrested to trial within the times provided in the speedy trial rule. Further, as noted above in Weed, this Court has consistently disapproved of any action by the State unilaterally tolling the running of the speedy trial period. See, e.g., Genden, 648 So.2d at 1185 (holding that the State's announcement of "no action" does not toll speedy trial); State v. Agee, 622 So.2d 473, 475 (Fla.1993) (holding that the State's announcement of a nolle prosequi in a case does not toll speedy trial). We also agree with the observation by the court in Williams that the exceptions to enforcement of the speedy trial times usually contemplate some affirmative action by the defendant rendering him unavailable for trial or responsible for delaying a trial. No such action has been cited here.
In Bulgin and Williams, it is undisputed that the State was essentially in complete control of the chain of events (e.g., arrest, offer and terms of the cooperation agreement, rearrest, and timetable on filing formal charges). Thus, it appears any delay or unavailability in prosecution and trial was attributed to the State in the first instance by deciding to place these cases on a different prosecutorial track, and in seeking the benefit of the cooperation of the defendants to make other cases. As the Fifth District noted, it is not unreasonable to expect that if the State makes this decision after an arrest, it cannot ignore the speedy trial rule; and it has the responsibility to take the rule into account, including the obvious option of including a waiver of speedy trial in the cooperation agreement, something the court noted the State was aware of and obviously knew how to do since it was undisputed that it had done so in other cooperation agreements. See Williams, 757 So.2d at 600. However, as noted above, in neither Bulgin nor Williams was the speedy trial issue discussed or waivers sought. Rather, the State relies on the silence of the defendants and a silent record. Yet, the State can cite no instance in which a court has held that mere silence constitutes a waiver of the right to a speedy trial.
We simply conclude that if defendants are to waive their speedy trial rights *312 there must be some more explicit action or evidence of intent to do so than the mere agreement to cooperate with the police in other criminal investigations or prosecutions. As noted above, it is the responsibility of the prosecution to bring the case to trial within 175 days of arrest, and, absent speedy trial waivers or other grounds to establish a speedy trial exception, the State has the responsibility to proceed with a timely prosecution of the defendants. It is undisputed that they did not do so in the cases before us today.
We realize that there may be situations in which this holding will not apply (e.g., when other arguments are made involving different circumstances, that defendants were "unavailable" or that they affirmatively frustrated the State's ability to go to trial). See Barker, 407 U.S. at 522, 92 S.Ct. 2182 ("[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case....").[2] However, here the State makes no claim that the prosecutions or trials were otherwise delayed because of some action of the defendants beyond their cooperation with the police. And, of course, as has been noted above, we are not faced with a situation where the speedy trial rule was specifically discussed and waivers secured.
We conclude that the First District improperly attributed the speedy trial delays to the defendants when it pointed solely to the existence of the cooperation agreements to establish the defendants' responsibility for the delay. Accordingly, we quash the First District's decision in Bulgin and approve the Fifth District's decision in Williams.
It is so ordered.
PARIENTE, C.J., and LEWIS, QUINCE, and CANTERO, JJ., concur.
QUINCE, J., concurs with an opinion, in which CANTERO, J., concurs.
BELL, J., concurs in result only with an opinion.
WELLS, J., dissents with an opinion.
QUINCE, J., concurring.
While I agree with the decision reached by the majority in these cases, I write to express my concerns about the need for an amendment to the speedy trial rule that would address these types of situations. We have reiterated very recently that speedy trial begins to run when the defendant is arrested. See State v. Naveira, 873 So.2d 300 (Fla.2004). I do not take issue with this proposition. We have also held that, absent a waiver by the defendant, only one of the circumstances delineated in Florida Rule of Criminal Procedure 3.191 will serve to extend the time in which a defendant must be brought to trial. I also agree with the majority that the circumstances of this case do not fall within any of the recognized exceptions to the speedy trial rule.
However, we should not allow defendants to use the speedy trial rule in the manner demonstrated by these cases. The defendants were approached by the State and given opportunities to assist the State with other drug cases. For whatever reasons,[3] the defendants agreed. Nothing *313 in this record indicates that the defendants were in any way coerced into making these decisions. As a part of the agreements, the State, at the defendants' behest, agreed to release the defendants and to delay the filing of their criminal charges until their substantial assistance was completed. Thus, the defendants not only had the benefit of being free to roam the streets, but were also free of any criminal charges during the period of time they were rendering assistance. They received the benefits of their agreements with the State.
While there was no discussion of the speedy trial rule, the defendants certainly knew that the State was going to charge them when their assistance to the State was completed. It seems to me that implicit in the defendants' agreements with the State was an acknowledgement that the State could proceed with the defendants' individual criminal cases when their assistance to the State was over. Yet the defendants, after getting the benefits of their bargains, filed motions for discharge under the speedy trial rule.
I believe that we should amend rule 3.191(l) to allow for an extension of speedy trial under this type of circumstance. Rule 3.191(l) allows a trial judge to extend the time periods provided for under the speedy trial rule for exceptional circumstances. This subdivision outlines six instances of exceptional circumstances, but the situation presented by these cases does not fall within any of the six exceptions. I believe that this type of situation should be included as an exceptional circumstance. Defendants should not be allowed to enter into these types of agreements and then use the speedy trial rule to their advantage. I recognize that the State can also protect the people's interest by getting a waiver of speedy trial at the time these agreements are negotiated. I further urge assistant state attorneys to do so. However, in those instances where the State does not get an explicit waiver, the defendant should not be allowed to "have his cake and eat it too."
CANTERO, J., concurs.
BELL, J., concurring in result only.
The precedent of this Court constrains me to concur with the majority. However, like Justices Wells and Quince, I am troubled with the rule of law that flows from this case. Most importantly, I too believe that we have applied (and now rewritten) a judicially created rule of procedure in a manner that unnecessarily constricts the applicable statute of limitations. Therefore, I concur in result only.
Also, given the breadth of applicability this Court has given to the right to a speedy trial, I write separately out of a concern that we lose sight of the pivotal event to which this right attachesan "arrest." Because there was no issue that these defendants were arrested, the majority opinion did not need to define the term. However, because the speedy trial rule does not provide a definition of arrest and because of the unique facts of the cases before us, I believe a reiteration of what constitutes an arrest for purposes of the speedy trial rule is important. The proper, technical definition of arrest is clear in Florida. As this Court wrote in Melton v. State, 75 So.2d 291, 294 (Fla.1954):
It is uniformly held that an arrest, in the technical and restricted sense of the criminal law, is "the apprehension or taking into custody of an alleged offender, in order that he may be brought into the proper court to answer for a crime." Cornelius, Search and Seizures, 2nd ed., Sec. 47. When used in this sense, an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; *314 (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.
Given this definition of arrest, it is clear that not all custodial detentions constitute an arrest in which the right to speedy trial has attached. For example, an investigatory detention would not mark the start of the speedy trial period. See State v. Lail, 687 So.2d 873, 875 (Fla. 2d DCA 1997). On the other hand, a formal arrest is not always necessary to mark the start of the speedy trial period. See id.
In essence, the right to speedy trial attaches only to those persons who have been arrested. We must be careful that the expansion of this right has a proper boundary and that we not permit its attachment to spill over into nonarrest circumstances. Reiterating the technical definition of arrest will hopefully assist law enforcement, defendants, and trial judges in understanding and applying the scope of this Court's opinion.
WELLS, J., dissenting.
I dissent because the majority applies a judicial rule of procedure in a manner that eviscerates the statute of limitations enacted by the Legislature. The majority's decision adds to a line of precedents from this Court that has created and continually expanded a substantive right which has no basis in the original language of the rule itself or in Florida's statutes and is not mandated by the State or Federal Constitutions. I also dissent because I would approve the First District's decision in this case that the speedy trial rule should not discharge the defendants under these circumstances.
The original language of Florida's speedy trial rule stated that "every person charged with a crime by indictment or information shall be brought to trial" within a specified time of the arrest. Fla. R.Crim. P. 3.191(a) (2003). Because its meaning is plain from the text, I have interpreted this to mean that the speedy trial rule only applies to defendants facing charges brought by indictment or information. Genden v. Fuller, 648 So.2d 1183, 1185 (Fla.1994) (Wells, J., dissenting). Despite this plain meaning, this Court has produced a line of cases that has steadily chipped away at the Legislature's statute of limitations by interpreting the rule to apply to any individual who has been arrested, even when no indictment or information has been filed and even when charges have been dismissed and the defendant released. State v. Williams, 791 So.2d 1088 (Fla.2001); Reed v. State, 649 So.2d 227 (Fla.1995); Genden v. Fuller, 648 So.2d 1183 (Fla.1994); Farina v. Perez, 647 So.2d 113 (Fla.1994); Dorian v. State, 642 So.2d 1359 (Fla.1994); State v. Agee, 622 So.2d 473 (Fla.1993); see also State v. Robbins, 863 So.2d 168 (Fla.2003); Brown v. State, 715 So.2d 241 (Fla.1998). I dissented from or concurred in these decisions, citing my concern that the majority was creating substantive law in a procedural context. This line of cases most recently culminated in the removal of the words "by indictment or information" from the first paragraph of the rule. Amendments to Fla. Rules of Crim. Pro., 886 So.2d 197, 198 (Fla.2004). I concurred in the amendment only because the rule codified what the Court had already done through its case law, but I wrote a specially concurring opinion to again voice my *315 concerns. Id. at 200 (Wells, J., concurring specially).
Florida's speedy trial rule is a procedural mechanism used to implement a defendant's constitutional right to a speedy trial. The rule itself is not constitutionally required. See generally R.J.A. v. Foster, 603 So.2d 1167, 1169-72 (Fla.1992); State v. Bivona, 496 So.2d 130, 133 (Fla.1986). Florida's speedy trial rule sets precise time limits, but the State and Federal Constitutions do not require that a defendant be tried within a specific period of time. In fact, the United States Supreme Court has explicitly stated that there is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." Barker v. Wingo, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).
Likewise, there is no constitutional right to a permanent discharge from a crime when a state's speedy trial rule has been violated. Many jurisdictions allow courts to remedy a violation by granting discharges (i.e., dismissals) without prejudice against a state's ability to recharge the defendant for the same crime. For example, federal courts have discretion to dismiss a case with or without prejudice depending on a number of factors. 18 U.S.C. § 3162(a)(2) (2000). Oklahoma courts must conduct a review when an incarcerated defendant has not been brought to trial within one year of arrest. Okla. Stat. tit. 22, § 812.1(A) (2004). If upon review the court finds the state has not proceeded with due diligence, the court may dismiss the case, but such dismissal does not preclude the refiling of charges as long as there is good cause and the dismissed case has not yet advanced to a preliminary hearing before dismissal. Id. § 812.2(D). A dismissal in California for a speedy trial violation similarly does not bar future prosecution if the dismissal occurred prior to a preliminary hearing. Cal.Penal Code § 1382, 1387(c) (Deering 2004). California additionally allows the refiling of felony charges even if a preliminary hearing has already been held, provided that the refiling is only the second time charges have been brought for that offense. Id. § 1387(a); Burris v. Superior Court of Orange County, 34 Cal.4th 1012, 22 Cal.Rptr.3d 876, 103 P.3d 276 (2005). Even then, charges may be refiled upon a showing of certain special circumstances. Cal.Penal Code § 1387(a)(1)-(3).
I dissent here because the majority now expands the scope of protection under the speedy trial rule to include defendants who have been arrested with no subsequent filing of formal charges and then released so that they can meet their end of a bargain under a cooperation agreement by assisting the State in apprehending other criminals. These individuals were not expecting a trial until their assistance was complete and therefore could not have been prejudiced by the State's failure to proceed to trial within the speedy trial period. Despite this, the majority has essentially decided that every violation of the speedy trial rule requires the defendant be granted total immunity from prosecution for any crime arising from that episode, including even immunity for a defendant who makes a deal with a law enforcement agency that inherently requires a delay in proceedings. Construing the speedy trial rule as requiring a discharge with prejudice in all cases converts the procedural rule into a trumping of the statute of limitations. This immunity extends to serious crimes like murder, effectively reducing the statute of limitations for murder from a limitless period down to only 175 days. § 775.15(1)(a), Fla. Stat. (2004).
This latest application of the rule fails to account for the reality that the decision to arrest is different from the decision to *316 charge. Prosecutors are not always involved in arrest decisions. In cases where police officers make the decision to arrest, prosecutors will be forced to indict and proceed to trial within the speedy trial period even though they may need more time to gather sufficient evidence, prepare the case, secure the apprehension of other suspects, or negotiate a plea arrangement with the defendant. The only other option is to forgo arrest, which in some cases could produce even more dire consequences. See, e.g., Agee, 622 So.2d at 477 (Overton, J., dissenting) ("The option of waiting to arrest until after sufficient evidence to convict has been obtained provides an opportunity for a defendant to leave the jurisdiction as well as to inflict additional harm on others.").
I continue to hold the opinion that Florida's speedy trial rule needs redrafting and rewriting. The rule should not apply to defendants in these kinds of cases. Even if the rule is applied, these cases present a situation in which there should not be a discharge with prejudice. I am concerned about the use of the rule to manipulate, not foster, the process. As previously noted, neither the State nor the Federal Constitution requires that a speedy trial violation be remedied with a permanent discharge. Instead, charges should be allowed to be refiled unless the defendant can demonstrate that the rule violation prejudiced the preparation of a defense.
In this case, it appears to me that the rule was manipulated. The cooperation agreement specifically provided that no charges would be filed until the defendants' assistance to law enforcement was complete. The provision was intended to satisfy the defendants' concern that formal charges and court appearances would jeopardize their covert assistance. The delay in the filing of charges was therefore the result of a provision bargained for by the defendants. The defendants essentially sought a condition to the agreement that allowed them to exploit the speedy trial rule to their advantage. These types of delays should be considered attributable to the accused and therefore a valid exception to the speedy trial rule. Otherwise, the rule is vulnerable to manipulation by clever defendants. I would approve the decision of the First District.
NOTES
[1] The other two cases considered with Bulgin by the First District were State v. Patel, and State v. Pelky, case numbers 1D02-5003 and 1D02-5004, respectively.
[2] Each case should be reviewed on its own to determine to whom the failure to hold trial should be attributed. For example, there may be circumstances where the defendant specifically asks not to be tried until his cooperation is complete, in which case the failure to hold trial would be "attributable to the accused."
[3] There is nothing in this record to indicate whether the defendants' agreements also included reduced charges.